**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:15-CV-439**

| | |
|---|---|
| LEGALZOOM.COM, INC., | |
| Plaintiff, | |
| v. | <u>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**</u> |
| NORTH CAROLINA STATE BAR; RONALD L. GIBSON, in his official capacity only; JOSHUA T. WALTHALL in his official and individual capacities; FERN GUNN SIMEON in her official and individual capacities; and JOHN N. FOUNTAIN, in his official and individual capacities, | <u>**JURY TRIAL DEMANDED**</u> |
| Defendants. | |

1

# TABLE OF CONTENTS

**PAGE**

I.      Introduction and Summary ............................................................................... 3

II.     United States Trade and Commerce ...................................................................... 7

III.    The Parties ...................................................................................................... 8

        A.      The Plaintiff.............................................................................................. 8

        B.      The Defendants.......................................................................................... 8

        C.      The Co-Conspirators ................................................................................. 9

IV.     Jurisdiction and Venue .................................................................................... 12

V.      The Facts ...................................................................................................... 12

        A.      LegalZoom's prepaid legal services plans ................................................. 12

        B.      The North Carolina State Bar, the State Bar Council, and the
                Authorized Practice Committee regulate prepaid legal services plans,
                despite having no statutory authority to do so........................................... 14

        C.      Defendants' illegal and unreasonable anticompetitive conduct................. 17

VI.     Claims for Relief .......................................................................................... 29

        Count I: Combination and conspiracy in unreasonable restraint of trade in
                violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 ......................... 29

        Count II: Monopolization, attempted monopolization, and combination and
                conspiracy to monopolize in violation of Section 2 of the Sherman
                Act, 15 U.S.C. § 2 ................................................................................... 30

VII.    Relief Sought ............................................................................................... 31

VIII.   Jury Trial Demand ......................................................................................... 32

## I.    Introduction and Summary.

1.    On February 25, 2015, the Supreme Court handed down its landmark decision in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 135 S. Ct. 1101 (2015) (alternatively, "*Dental Examiners*").  Affirming the decision of the United States Court of Appeals for the Fourth Circuit, the Supreme Court held that a state agency controlled by active market participants in the occupation the agency regulates must be actively supervised by a politically accountable state official in order to enjoy immunity from federal antitrust laws.  135 S. Ct. at 1114.  The Supreme Court observed, quite logically, that "[w]hen a state empowers a group of active market participants to decide who can participate in its market, and on what terms, the need for supervision is manifest."  *Id*.

2.    The North Carolina State Bar (alternatively, the "State Bar") had hoped for a different ruling in the *Dental Examiners* case.  Like the North Carolina State Board of Dental Examiners, the North Carolina State Bar is a "state agency" composed primarily of licensed professionals who participate actively in the very market that the State Bar regulates.  The North Carolina State Bar was sufficiently worried about the *Dental Examiners* case that it filed a "friend of the court" brief in the Supreme Court, arguing that unless the Supreme Court reversed the Fourth Circuit's decision, the State Bar would face antitrust lawsuits based on its unsupervised regulation of the market for legal services.  In fact, the State Bar specifically predicted that unless the Supreme Court extended Sherman Act immunity to cover the Dental Board, the State Bar would face the

3

threat of civil liability for treble damages and attorney's fees, and possibly even criminal prosecution, under the federal antitrust laws.[1]

3.    The Supreme Court rejected the State Bar's arguments, instead holding that a "state agency" composed primarily of market participants is immune from antitrust liability <u>only</u> if its anticompetitive actions are in pursuit of a clearly articulated state policy and are actively supervised by the state.  Reacting to the legal exposure confirmed by the *Dental Examiners* decision, the North Carolina State Bar promptly sponsored legislation that would require the North Carolina Attorney General to "actively supervise" certain of the State Bar's actions taken to enforce its members' monopoly on providing legal services, including the State Bar's actions taken against perceived competitors it claims are engaged in the "unauthorized practice of law."[2]  By proposing this legislation the State Bar has expressly conceded that such supervision is necessary for the State Bar to obtain immunity from liability for violating the federal antitrust laws.  To date, the State Bar's proposed legislation has not been enacted and remains pending in the North Carolina legislature.  Plaintiff expresses no opinion as to whether the proposed legislation, as drafted, would satisfy the *Dental Examiners* standard.

---

[1] Brief of North Carolina State Bar *et al.*, available at http://www.americanbar.org/content/dam/ aba/publications/supreme_court_preview/BriefsV4/13-534_pet_amcu_ncsb-etal.authcheckdam.pdf (last visited June 3, 2015).  LegalZoom, along with other innovative companies and thirteen law professors, filed an *amicus* brief urging affirmance and explaining how excessive state bar regulation of the market for legal services contributes to the crisis of access to justice and is sometimes abused for anticompetitive purposes.  Brief of LegalZoom *et al.*, available at http://sblog.s3.amazonaws.com/wp-content/uploads/2014/08/13-534-Shake.pdf (last visited June 3, 2015).

[2] *See* Senate Bill 353, North Carolina General Assembly (filed Mar. 31, 2015); Ronald L. Gibson, *An Update on Legislation and Litigation*, N.C. State Bar J. at 7-8 (Summer 2015).

4

4.     As the North Carolina State Bar predicted, and as the U.S. Supreme Court considered and implicitly held, the unsupervised activities of the North Carolina State Bar are now fully subject to the reaches of the federal antitrust laws.  Plaintiff LegalZoom.com, Inc. (alternatively, "LegalZoom") brings this action under the federal antitrust laws to challenge and seek redress from certain anticompetitive, exclusionary, and monopolistic conduct by the North Carolina State Bar and other actors.  In the clear absence of state-action immunity, the actions of Defendants, as outlined below, violate the Sherman Act, 15 U.S.C. §§ 1 and 2.

5.     LegalZoom has been compelled to file this lawsuit because the Defendants are illegally and unreasonably restraining trade in the market for legal services, including delivery through prepaid legal services plans, in North Carolina (the "Relevant Market"). Specifically, the Defendants are illegally and unreasonably excluding LegalZoom from offering its prepaid legal services plans in this state, in violation of the Sherman Antitrust Act.

6.     The North Carolina State Bar has and exercises the power to exclude lawyers and non-lawyers from competing in the Relevant Market in various ways. Although designated a state agency, the State Bar in fact is controlled by private individuals who actively participate in the Relevant Market.  This group of active market participants regulates the Relevant Market, exercising the limited power granted by the Legislature, as well as power that the Legislature has not granted.

7.     For years, the North Carolina State Bar, by and through its agents and Council members, has engaged in unsupervised anticompetitive activity under the guise of regulating the "unauthorized practice of law."  In doing so, the North Carolina State Bar, like the North Carolina State Board of Dental Examiners before it, regularly exceeds its grant of legislative authority by engaging in misleading "cease and desist" letter campaigns designed to intimidate businesses and individuals into ceasing activities in North Carolina that are perceived by the State Bar, its agents, and its Council members to be in competition with members of the State Bar.

8.     The North Carolina State Bar has also engaged in unauthorized and anticompetitive conduct illegally and unreasonably restraining trade in the Relevant Market.  In 1991, the North Carolina Legislature removed from the State Bar any power over prior and continuing approval of prepaid legal services plans, leaving to the State Bar only the ministerial task of keeping a registration list of plans sold in North Carolina. The State Bar, however, defied the Legislature.  Over time, the State Bar unilaterally and ultra vires reassumed and exercised the power the Legislature had removed.  The State Bar adopted – without legislative authority or active State supervision – a restrictive definition of what constitutes a prepaid legal services plan, and then began to refuse to "accept" for registration plans that purportedly did not meet its own definition, excluding those plan providers from the Relevant Market.

9.     When LegalZoom submitted its prepaid legal services plans for registration, the Defendants refused to "accept" them, thus excluding LegalZoom's plans from sale in

6

the Relevant Market. The Defendants' reasons for refusing registration were purely pretextual, as shown by the fact that the Defendants had readily registered other plans that contained the same features that purportedly disqualified LegalZoom's plans.

10.     The Defendants' anticompetitive activity is not, and has not been, in pursuit of a clearly articulated state policy; indeed, it has been in direct contravention of that policy. In addition, the Defendants' anticompetitive conduct is, and has been, wholly unsupervised by the State of North Carolina. The State Bar's anticompetitive conduct exceeds its statutory authority. Therefore, the Defendants' conduct is not entitled to immunity from the federal antitrust laws.

11.     The Defendants' unlawful and unreasonable exclusion of LegalZoom's prepaid legal services plans from the Relevant Market has injured competition in the Relevant Market and caused LegalZoom to lose more than $3,500,000 of sales in North Carolina. LegalZoom brings this lawsuit to recover from the Defendants actual and treble damages under the Sherman Act, totaling more than $10,500,000, exclusive of fees and costs. LegalZoom also seeks permanent injunctive relief as described herein.

**II.     United States Trade and Commerce.**

12.     Defendants' activities and the conduct of Defendants and their co-conspirators occurred in and/or affected a substantial portion of interstate commerce, including trade and commerce to, from, and within this District.

## III.     The Parties.

### A.     The Plaintiff.

13.     Plaintiff **LegalZoom.com, Inc.** is a Delaware corporation with its principal places of business in Glendale, California and Austin, Texas.

### B.     The Defendants.

14.     Defendant **North Carolina State Bar** is an agency of the State of North Carolina.  It may be served with citation by serving its registered agent for service of process, Executive Director L. Thomas Lunsford, II, at 208 Fayetteville Street Mall, Raleigh, North Carolina 27601.[3]

15.     Defendant **Ronald L. Gibson** ("Defendant Gibson") is President of the North Carolina State Bar, and is responsible for its operations.  He is sued in his official capacity only.   Defendant Gibson signed an Order dated April 17, 2015, denying registration of LegalZoom's prepaid legal services plans.  He may be served with process at his residence at 3112 Ethereal Lane, Charlotte, North Carolina 28226, at his place of employment, Ruff Bond Cobb Wade & Bethune, LLP, 831 East Morehead Street, Suite 860, Charlotte, North Carolina 28202, or wherever he may be found.

16.     Defendant **Joshua T. Walthall** ("Defendant Walthall") is Deputy Counsel for the North Carolina State Bar.  Defendant Walthall refused to register LegalZoom's prepaid legal services plans.  He is sued in his individual and official capacities.  He may

---

[3] The registered address for the North Carolina State Bar's process agent as listed on website for the North Carolina Attorney General is the North Carolina State Bar's old address, 208 Fayetteville Street Mall, Raleigh, North Carolina, 27601.  Plaintiff intends to send a courtesy copy of the summons and complaint to its process agent at the new address, 217 E. Edenton Street, Raleigh, North Carolina 27601.

8

be served with process at his residence at 3017 March Creek Road, Knightdale, North Carolina 27545, or at his place of employment, 217 E. Edenton Street, Raleigh, North Carolina 27601, or wherever he may be found.

17.     Defendant **Fern Gunn Simeon** ("Defendant Simeon") is Deputy Counsel for the North Carolina State Bar.  Defendant Simeon refused to register LegalZoom's prepaid legal services plans.  She is sued in her individual and official capacities.  She may be served with process at her residence at 4009 Cottonwood Drive, Durham, North Carolina, 27705, or at her place of employment, 217 E. Edenton Street, Raleigh, North Carolina 27601, or wherever she may be found.

18.     Defendant **John N. Fountain** ("Defendant Fountain") is a Councilor of the North Carolina State Bar and a member of its Authorized Practice Committee.  Defendant Fountain served as Acting Chairman of the APC during a hearing on April 15, 2015, where the APC considered and voted to deny registration of LegalZoom's prepaid legal services plans.  Defendant Fountain himself voted to deny registration.  He is sued in his individual and official capacities.  He may be served with process at his residence at 3056 Granville Drive, Raleigh, North Carolina 27609, or at his place of employment, Young Moore and Henderson, P.A., 3101 Glenwood Avenue, Suite 200, Raleigh, North Carolina 27612, or wherever he may be found.

### C.     The Co-Conspirators.

19.     Additional individuals, firms, and other entities not named as Defendants in this Complaint also conspired with Defendants by aiding, abetting, and performing acts in

9

furtherance of this conspiracy, and, as co-conspirators, they are jointly and severally liable for the damages sustained by Plaintiff.

20.     The following members and advisory members of the Authorized Practice Committee conspired with Defendants in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, to exclude Plaintiff from the Relevant Market and are therefore jointly and severally liable to Plaintiff for the damages sustained:

**Marcia H. Armstrong**, The Armstrong Law Firm, P.A., Smithfield.

**Henry C. Babb, Jr.**, solo practice, Wilson.

**Robert J. Bernhardt**, Bernhardt and Strawser, P.A., Charlotte.

**Heidi C. Bloom**, Wyrick Robbins Yates & Ponton LLP, Raleigh.

**Robert C. Bowers**, Moore & VanAllen, PLLC, Charlotte.

**John A. Bowman**, Maxwell, Freeman & Bowman, P.A., Durham.

**David F. Branch, Jr.**, Musselwhite, Musselwhite, Branch & Grantham, P.A., Lumberton.

**W. Edward Bunch**, Bunch Robins & Stubblefield, LLP, Asheboro.

**Gerald Collins, Jr.**, The Collins Law Firm, P.C., Murphy.

**Nicholas J. Dombalis, II**, Nicholls & Crampton, P.A., Raleigh.

**Theodore C. Edwards, II**, The Banks Law Firm, P.A., Durham.

**K. Edward Greene**, Wyrick Robbins Yates & Ponton LLP, Raleigh.

**Sonny S. Haynes**, Womble Carlyle Sandridge & Rice LLP, Winston-Salem.

**Alan S. Hicks**, Alan S. Hicks, P.A., Roxboro.

**F. Fincher Jarrell**, solo practice, Charlotte.

**Debra L. Massie**, Wheatly, Wheatly, Weeks & Lupton, P.A., Beaufort.

10

**Lonnie M. Player, Jr.**, Law Offices of Lonnie M. Player, Jr. PLLC, Fayetteville.

**Harold G. Pope**, Wright, Worley, Pope, Ekster & Moss, PLLC, Whiteville.

**Donna R. Rascoe**, Nelson Mullins Riley & Scarborough LLP, Raleigh.

**Matthew W. Smith**, solo practice, Eden.

**Hon. Kimberly S. Taylor,** Kimberly S. Taylor, PLLC, Taylorsville.

**C. Branson Vickory III**, solo practice, Mount Olive.

**John S. Willardson**, solo practice, Wilkesboro.

Upon information and belief, the above individuals, all of whom are licensed North Carolina attorneys and active participants in the Relevant Market, were present at the April 15, 2015, APC meeting where they each voted to refuse registration of LegalZoom's prepaid legal services plans. These concerted acts by Defendants and the above-named co-conspirators resulted in injury to competition in the Relevant Market and in the illegal and unreasonable exclusion of LegalZoom from that Market.

21.     At all relevant times, each Defendant and co-conspirator was an agent of each of the remaining Defendants and their co-conspirators and, in performing the acts alleged in this Complaint, was acting within the course and scope of such agency. Each Defendant and co-conspirator ratified or authorized the wrongful acts of each of the other Defendants and their co-conspirators. Defendants are individually and collectively sued as participants, co-conspirators, and aiders and abettors in the improper acts and transactions that are the subject of this action.

22.     Whenever this Complaint refers to any act, deed, or transaction of the State Bar, the allegation means that the State Bar engaged in the act, deed, or transaction by or

through its officers, directors, agents, employees, representatives, or members while they were actively engaged in the management, direction, control or transaction of the State Bar's business or affairs.

## IV. Jurisdiction and Venue.

23.     LegalZoom brings this lawsuit against the Defendants seeking monetary and injunctive remedies for the Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, pursuant to 15 U.S.C. §§ 15(a) and 26.

24.     This Court has subject matter jurisdiction over the claims asserted in this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. §§ 15(a) and 26.

25.     This Court has personal jurisdiction over each Defendant because each Defendant resides in North Carolina and/or has substantial, continuous contacts with North Carolina.

26.     Venue is proper in this District because Defendant Simeon resides in this District and all Defendants are residents of North Carolina.  28 U.S.C. § 1391(b)(1). Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District in that LegalZoom was prevented from selling its plans in this District.  28 U.S.C. § 1391(b)(2).

## V. The Facts.

### A. LegalZoom's prepaid legal services plans.

27.     LegalZoom was founded in 2000.  It operates a website located at www.legalzoom.com that provides access to general information about the law,

12

downloadable blank legal forms, and self-help legal document services. Prior to 2010, LegalZoom did not provide its customers access to the services of attorneys, but limited its offerings to self-help legal document services and related non-legal assistance.

28.     In 2010, LegalZoom began selling prepaid legal services plans. These plans provide their members with access to attorneys licensed in their states who have contracted with LegalZoom to provide plan members certain legal advice and services defined in the plans. LegalZoom currently sells prepaid legal plans in 42 states and the District of Columbia. It expects to begin selling its plans in several more states shortly. LegalZoom's plans provide a cost-effective means of accessing the advice and services of an independent, licensed attorney. These plans are very popular with consumers. To date, consumers nationally have scheduled over 200,000 consultations from attorneys through LegalZoom's prepaid legal services plans.

29.     LegalZoom offers two plans. Business Advantage Pro is designed for small businesses. Legal Advantage Plus is designed for individuals. Both plans provide their members with defined legal services from North Carolina licensed attorneys, including: (1) telephone consultations; (2) review of legal documents; (3) a yearly legal check-up; and (4) a 25% discount from the plan attorneys' standard rates for additional legal services not included in the plans. Customers who buy LegalZoom's prepaid legal services plans also receive additional, free non-legal services provided by LegalZoom and other third-party providers, such as access to LegalZoom's blank form library and "cloud" electronic document storage services.

13

30.     LegalZoom has been trying to register its prepaid legal services plans in North Carolina since July, 2010.  For almost five years, LegalZoom has been prevented from selling its plans in North Carolina because the Defendants have refused to "register" the LegalZoom plans, a purely ministerial act.  As explained further below, registration of a prepaid plan with the North Carolina State Bar is a precondition for selling that plan in North Carolina.  The State Bar, together with, by, and through the other Defendants, effectively exercises veto power over the sale of prepaid legal services plans in North Carolina, and it regularly exercises that veto to illegally exclude and unreasonably restrain competition in the Relevant Market.

**B.      The North Carolina State Bar, the State Bar Council, and the Authorized Practice Committee regulate prepaid legal services plans, despite having no statutory authority to do so.**

31.     The North Carolina State Bar is an agency of the State of North Carolina. N.C.G.S. § 84-15.  The State Bar identifies itself as "the state agency responsible for regulating the practice of law in North Carolina."  http://www.ncbar.gov/ (last accessed June 3, 2015).

32.     The State Bar is governed by a 62-member Council, almost all of whom are licensed North Carolina attorneys.  Except for three members, all Council members are elected solely by other licensed North Carolina attorneys.  The State Bar suggests that the overwhelming dominance of the Council by licensed attorneys is not a problem because the council includes three non-lawyer members.      *See* http://www.ncbar.gov/public/whatwedo.asp (last accessed June 3, 2015).  The Council

14

elects officers who run the day-to-day business of the State Bar and supervise a staff of over 60 lawyers and non-lawyers. At all times relevant to this Complaint, the Council's membership overwhelmingly consisted of lawyers engaged in private practice in North Carolina, that is, active market participants in the Relevant Market.

33.     The State Bar Council has a standing Authorized Practice Committee, which the State Bar claims has the authority to investigate suspected unauthorized practice of law, prosecute for injunctive relief, or refer matters to other state agencies. http://www.ncbar.gov/public/upl.asp (last accessed June 3, 2015). The Authorized Practice Committee's voting membership consists almost entirely of licensed North Carolina attorneys. At all times relevant to this Complaint, the Authorized Practice Committee's voting membership consisted overwhelmingly of licensed attorneys engaged in active participation in the Relevant Market.

34.     The State Bar, its Council, and its Authorized Practice Committee are not actively supervised by politically accountable officials of the State of North Carolina. No politically accountable State official has or exercises the power to review the State Bar's acts and disapprove those that do not accord with State policy. No politically accountable State official reviews the substance of the State Bar's decisions or has the power to veto or modify particular decisions of the State Bar to ensure they accord with state policy.

35.     Under North Carolina law, "[a]ll organizations offering prepaid legal services plans shall register those plans with the North Carolina State Bar Council on

forms provided by the Council. Each plan shall be registered prior to its implementation or operation in this State and shall renew its registration with the State Bar annually." N.C. Gen. Stat. § 84-23.1.

36.     Although North Carolina law simply requires that a prepaid legal plan provider "shall register" its plan with the Council "on forms provided by the Council," the State Bar has, voluntarily and unlawfully, assumed full regulatory power over the registration – and therefore the sale – of all legal plans in North Carolina. The State Bar has promulgated its own definition of a "prepaid legal services plan." The Defendants refuse to register plans because they, in their unilateral and often arbitrary discretion, decide the plans do not meet the State Bar's definition, or for other reasons. The State Bar prohibits any licensed North Carolina attorney from participating in a prepaid legal services plan unless such plan has been registered with the State Bar. N.C. Rules of Professional Conduct 7.3(d)(2)(B). The State Bar's refusal to register a plan, therefore, excludes such plans from sale in North Carolina and excludes any North Carolina licensed attorney from providing services under such a plan.

37.     Under Rules and informal procedures, voluntarily and unlawfully adopted and practiced by the State Bar, when a plan is submitted for registration, State Bar counsel decides whether to "accept" the plan for registration. If counsel refuses to "accept" and register a plan, it is not registered and cannot be sold in North Carolina. The State Bar, together with and through counsel such as Defendants Simeon and Walthall, gives a plan sponsor whose plan the State Bar counsel has refused to register

16

only two choices: change the plan to satisfy the State Bar counsel's objections, resubmit the plan for review, and pay another filing fee, or "appeal" counsel's refusal to register the plan to the State Bar's own Authorized Practice Committee (alternatively, "APC"). If an "appeal" is requested, under procedures voluntarily and unlawfully adopted and practiced by the State Bar, the APC decides by majority vote whether the State Bar should register or refuse registration of the plan. The State Bar treats the Authorized Practice Committee's decision as its "final agency decision." It permits no further challenges to its refusal to register a plan.

### C. Defendants' illegal and unreasonable anticompetitive conduct.

#### 1. Defendants have a history of making anticompetitive and unauthorized "cease and desist" demands.

38. The North Carolina State Bar has a long history of engaging in anticompetitive conduct under the guise of enforcing the state's "unauthorized practice of law" statutes. For instance, the State Bar for years has engaged in anticompetitive investigations and letter-writing campaigns designed to restrict competition.

39. Among other things, the State Bar (like the Dental Board before them) has a practice of sending letters purporting to require individuals and companies to "cease and desist" engaging in behavior that the State Bar unilaterally claims constitutes the "practice of law." The State Bar frequently couches these letters in terms of "cease and desist" demands, implying that the State Bar has the legal authority to "order" the recipient of the letter to comply with its demands, when in fact the State Bar has no such authority. These "cease and desist" letters are clearly not authorized by statute and are

unsupervised and unregulated by any politically accountable State official. *See North Carolina State Board of Dental Examiners*, 135 S. Ct. at 1116 (North Carolina Dental Board not entitled to state-action immunity from antitrust liability where it "relied upon cease-and-desist letters threatening criminal liability, rather than any of the powers at its disposal that would invoke oversight by a politically accountable official.").

40.     The State Bar first communicated with LegalZoom in 2003 regarding its online document services.  After exchanging correspondence with LegalZoom, the Chair of the State Bar's Authorized Practice Committee, Barbara B. Weyher, issued a letter to LegalZoom stating that the Committee had met, had "carefully considered" LegalZoom's business, and had voted to dismiss the complaint because "the evidence was insufficient to support a finding of probable cause" that LegalZoom was engaged in the unauthorized practice of law.  The State Bar subsequently confirmed its finding in response to several inquiries from licensed North Carolina attorneys.  LegalZoom relied on the State Bar's finding and continued to offer its services in North Carolina.

41.     In 2007, however, with LegalZoom's growth perceived as a threat to licensed attorneys, State Bar Deputy Counsel David R. Johnson told LegalZoom that the Authorized Practice Committee had opened a new "investigation" of LegalZoom under a new Chair, Anthony S. di Santi.  In response, LegalZoom confirmed that its business model had not changed materially from 2003, and reminded Mr. Johnson that the APC had already determined that LegalZoom was not engaged in the "practice of law."

42.     Nonetheless, the State Bar issued a "LETTER OF CAUTION/Cease and Desist" dated May 5, 2008.  Without once mentioning or acknowledging the 2003 "no probable cause" finding, the letter asserted, unconditionally, that LegalZoom was engaged in the "practice of law" in violation of North Carolina law.  The State Bar stated unequivocally that LegalZoom's online document service "is illegal in North Carolina and must end immediately."  The State Bar threatened LegalZoom with civil and criminal prosecution and demanded "a response with evidence" that LegalZoom had "complied with the Committee's decision within 15 days," falsely implying that it had the authority to make rulings and issue orders.  The State Bar published its "cease and desist" letter on its website, distributed the letter to attorneys inside and outside North Carolina, and otherwise communicated the contents of the letter to third parties.

43.     LegalZoom responded to the "cease and desist" letter by explaining that the State Bar had previously and correctly concluded that LegalZoom was not engaged in the practice of law and that its "cease and desist" letter was factually and legally incorrect.  The State Bar ignored LegalZoom's response and continued to publish its "cease and desist" letter to third parties, to broadly and publicly publish statements that LegalZoom was violating North Carolina law, and to state that the State Bar had "prohibited" LegalZoom from doing business in North Carolina.

44.     Since 2002, the State Bar has sent scores, if not hundreds, of similar "cease and desist" letters to individuals and corporations it accused of engaging in the "unauthorized practice of law" in North Carolina.

19

45.    While LegalZoom refused to be intimidated by the State Bar's tactics and continued to make its online document services available to North Carolina consumers, other providers targeted by the State Bar either limited their offerings in North Carolina to those acceptable to the State Bar or stopped providing services in North Carolina altogether.

### 2.    Defendants have unilaterally and illegally assumed the power to regulate prepaid legal services plans.

46.    Prior to September 30, 1991, the North Carolina Legislature had, by statute, granted the State Bar Council authority to approve prepaid legal services plans prior to sale in the state.  Former N.C. Gen. Stat. § 84-23.1(b) (1975) provided (emphasis added):

> (b)  The [State Bar] council has the responsibility and duty of discipline and regulation of the practice of law in this State.  <u>Plans providing for prepaid legal services must be submitted to the council and may not be implemented or operated without the prior and continuing approval by the council as being proper under the statutes, rules and regulations governing the practice of law in this State</u>; provided, however, the council shall not approve any plan for prepaid legal services which in any way restricts the right of the client or person receiving prepaid legal services to select his own attorney from the actual members of the North Carolina State Bar, or a member of any other state bar in any other state where the claim or cause of action may arise.

47.    Thus, prior to September 30, 1991, under subsection (b) of Section 84-23.1, the Legislature had granted the State Bar, through its Council, the power to approve, prior to implementation or operation and thereafter, the sale of prepaid legal services plans in North Carolina, based on whether those plans were "proper under the statutes, rules and regulations" of the State.

48.    Effective September 30, 1991, however, the Legislature enacted Session

Law 1991-210, which repealed subsection (b) in its entirety, and replaced it with a new

subsection (b1) (emphasis added):

> (b1) All organizations offering prepaid legal services plans <u>shall register those plans with the North Carolina State Bar Council on forms provided by the Council</u>. Each plan shall be registered prior to its implementation or operation in this State.

49. Session Law 1991-210 thus removed from the State Bar any power to

approve legal services plans prior to sale and any power to determine whether plans are

"proper" under North Carolina law. Instead, those offering prepaid legal services plans

now are required simply to register those plans with the Council on forms provided by

the Council. The condition that prepaid legal services plans could not be sold "without

the prior and continuing approval by the council as being proper under the statutes, rules

and regulations governing the practice of law in this State" *was eliminated*. The *only*

statutory power remaining in the hands of the State Bar is to take the ministerial step of

registering legal services plans on forms it provided.

50. In 1994, the State Bar's administrative rules regarding prepaid legal

services plans were simple and straightforward, consistent with the Legislature's 1991

repeal of the condition that prepaid legal services plans were subject to "prior and

continuing approval" by the State Bar as being "proper" under the governing "statutes,

rules and regulations."

51. The State Bar's prepaid legal services rules remained unchanged until

2002, at which point the State Bar began to implement and to reassert – without

legislative authority or active State supervision – the power the Legislature had removed.

52.     First, the State Bar adopted a rule that implemented a restrictive definition of a "prepaid legal services plan," effective February 5, 2002.  *See* 27 NCAC 1E.0310 (2002).  Among other requirements, the rule limited prepaid legal services plans to those that offered legal services "in advance of need," and required the legal services "be provided by a licensed lawyer who is not an employee, director, or owner of the plan." *Id.*

53.     Next, effective August 23, 2007, the State Bar amended its rules to require that, before a plan could be sold in North Carolina, the plan's registration must be "accepted" by the State Bar "in accordance with" the State Bar's rules, including its self-promulgated and restrictive definition of a "prepaid legal services plan." *See* 27 NCAC 1E.0302 (2007).  The State Bar had no legislative authority to adopt this prerequisite to registration of a plan.  The State Bar was not pursuing a clearly articulated state policy. The State Bar was not actively supervised in amending this rule.

54.     The State Bar also further restricted the definition of an "acceptable" plan to those that are paid for in advance of "any immediate" need, and that definition now (according to the State Bar's interpretation) requires that any legal services provided under a plan be provided by *North Carolina licensed attorneys* only, regardless of whether the nature of the legal services provided requires a North Carolina law license (such as helping with a legal issue in another state).  *See* 27 NCAC 1E.0303 (2007).  The State Bar had no legislative authority to adopt this restrictive definition of a statutory

22

term, was not pursuing a clearly articulated state policy, and was not actively supervised by the state.

55.     Finally, the State Bar created a detailed registration procedure purporting to give itself the power to decide whether a plan submitted for registration "meets" the State Bar's self-promulgated definition, and to refuse registration if the State Bar concluded that the plan did not meet its definition.  *See* 27 NCAC 1E.0304(3) and 1E.0305 (2007). The State Bar also purported to give itself the power to *revoke* the registration of a previously-registered plan, if at any time the State Bar unilaterally decides a plan no longer meets its definition.  Revoking registration has the effect of immediately banning a plan from further sale in North Carolina.  The State Bar had no legislative authority to adopt these rules, was not pursuing a clearly articulated state policy, and was not actively supervised by the State when it adopted these rules, nor when it exercises the power it granted itself under these rules to exclude and restrain competition in the Relevant Market.

56.     In 2010, the State Bar adjusted its internal procedures for "accepting" prepaid legal services plans for registration.  Effective October 7, 2010, the duty to review and "accept" registrations was assigned to State Bar counsel, and a procedure created for "appealing" counsel's refusal to register a plan to the Authorized Practice Committee.  *See* 27 NCAC 1E.0305 (2010).

57.     The State Bar had no legislative authority to adopt these rules, to define what constitutes a prepaid legal services plan, or to refuse to register plans that it decides

do not meet its definition or for other arbitrary reasons. The State Bar was not acting in pursuit of a clearly articulated state policy, nor was it actively supervised, when it adopted these rules or when it acted to illegally exclude and unreasonably restrain competition in the Relevant Market.[4]

58. The State Bar's authorizing statute vests the State Bar with authority to determine specific matters regarding attorney licensure and competence, "to regulate the professional conduct of licensed lawyers," and "to formulate and adopt rules of professional ethics and conduct" governing licensed attorneys. N.C. Gen. Stat. § 84-23(a). The authorizing statute does *not* empower the State Bar to define statutory terms such as "prepaid legal services plan," *nor* does it authorize the State Bar to deny registration (and therefore prevent the sale) of plans that do not meet the State Bar's self-adopted definition.

59. The State Bar's sole statutory authority with regard to prepaid legal services plans is to provide registration forms, collect administrative fees, and to register plans. N.C. Gen. Stat. § 84-23.1(b1) and (b2). It has no authority to exclude potential new entrants from the Relevant Market in which State Bar members actively compete.

60. Although the State Bar gives lip service to its lack of statutory authority to "regulate" or "approve" prepaid legal services plans, in reality the State Bar uses its self-

---

[4] The State Bar has claimed that the "North Carolina Supreme Court reviews and approves or disapproves our rules and regulations." *See* Ronald L. Gibson, *An Update on Legislation and Litigation*, N.C. State Bar J. at 7 (Summer 2015). This is incorrect. Rules adopted by the State Bar are not approved by the Supreme Court, but are merely "certified to" the Chief Justice and "entered upon" the Court's minutes. N.C.G.S. § 84-21(b). The only review is limited and passive: the Court "may" decline to have "so entered upon its minutes" any rules "which in the opinion of the Chief Justice are inconsistent with" Article 84. *Id.* This process in no way constitutes a "clearly articulated" state policy or "active supervision" of the State Bar by the Supreme Court. *See* Areeda & Hovenkamp, 1A Antitrust Law 50, 57.

granted authority to "accept" or "not accept" plans for registration as a means to regulate and restrict plans sold in North Carolina to those it unilaterally approves. By adopting its own definition of a "prepaid legal services plan" and then deciding whether a plan meets its definition before "accepting" the plan for registration, the State Bar is regulating and approving plans. Only those plans that the State Bar unilaterally decides meet its definition will be registered. Plans not registered cannot be sold. Accordingly, the State Bar, without statutory authority and without active state supervision, has set itself up as the gatekeeper for the sale of prepaid legal services plans in North Carolina, to the detriment of the consumers and potential competitors in the Relevant Market.

### 3. Defendants have refused to register LegalZoom's prepaid legal services plans, preventing their sale in North Carolina.

61. LegalZoom first sought to register its prepaid legal services plans with the North Carolina State Bar in July 2010, on the form provided by the State Bar. Rather than perform the ministerial task of simply registering the plans, deputy counsel for the State Bar, Defendant Fern Gunn Simeon, responded by listing purported requirements for registration of LegalZoom's plans and requiring LegalZoom to satisfy those requirements. Defendant Simeon also claimed that "LegalZoom continues to conduct business in a way that the Authorized Practice Committee prohibited [sic] in its May 5, 2008 cease and desist letter," using that letter as a basis to refuse to register the plans. The Authorized Practice Committee has no legal authority to "prohibit" LegalZoom from offering online document services. Nonetheless, from July 2010 onward, Defendants jointly and severally decided to refuse to register LegalZoom's prepaid legal services

25

plans in order to prevent LegalZoom from competing in the Relevant Market for legal services by selling those plans, and to justify their refusal based on their *ultra vires* opinion disapproving LegalZoom's online document services in North Carolina.

62.     Between July 2010 and July 2011, Defendants Simeon and the State Bar continually and repeatedly raised such arbitrary objections and obstacles to the registration of LegalZoom's plans.   Among other things, Defendants Simeon and the State Bar refused to register LegalZoom's plans based on the State Bar's self-promulgated definition of a prepaid legal services plan, based on arbitrary criteria not contained in its definition, and based on the State Bar's "cease and desist" letter claiming that LegalZoom's unrelated online document services had been "prohibited" by the State Bar.

63.     LegalZoom responded to and addressed each of the Defendants' objections, even offering to modify the terms of its plans.   Nonetheless, Defendant Simeon and the others taking part in the registration process refused to register LegalZoom's plans, preventing them from being sold to North Carolina consumers.

64.     On September 30, 2011, LegalZoom sued the State Bar in the Superior Court of Wake County, North Carolina seeking, among other relief, an order compelling the State Bar to register LegalZoom's prepaid legal services plans.   *See* Complaint, *LegalZoom.com, Inc. v. North Carolina State Bar*, No. 11 CVS 15111 (Sept. 30, 2011) (available at www.ncbusinesscourt.net).   The North Carolina Business Court dismissed

LegalZoom's claim for injunctive relief, requiring LegalZoom to obtain a "final decision" from the State Bar refusing registration.

65.     LegalZoom submitted new registrations for its two plans in September, 2014.   After an exchange of correspondence, Defendant Walthall, State Bar Deputy Counsel, sent LegalZoom two letters dated January 8, 2015, refusing to register either plan.  Defendant Walthall's letters claimed that LegalZoom's plans did not meet the State Bar's self-promulgated definition of a prepaid legal services plan.   Defendant Walthall offered LegalZoom the option of resubmitting revised plans to comply with his requirements, or to "appeal" his decision to the State Bar's Authorized Practice Committee.

66.     Among the purported reasons stated by Defendant Walthall for denying registration was that LegalZoom's plans did not meet the State Bar's self-adopted restriction that prepaid legal services plans be sold "in advance of immediate need," and that some services provided free of charge to customers of the LegalZoom plans were not provided by licensed North Carolina attorneys, regardless of whether those services constitute the practice of law.  These restrictions are not authorized by the Legislature, and the State Bar lacks legislative authority to deny registration on this basis.  Moreover, prior to denying LegalZoom's registration, the State Bar had readily registered prepaid legal services plans that covered preexisting legal issues and plans that included services provided by non-attorneys, showing that Defendant Walthall's refusal to register

LegalZoom's plans was a pretext for the State Bar's illegal and unreasonable anticompetitive exclusionary conduct.

67.    For instance, the State Bar accepted for registration prepaid legal service plans that are specifically tailored to provide for immediate legal needs, such as estate planning and debt relief services.  The State Bar accepted for registration plans that specifically advertised that they covered "preexisting conditions," that is, a plan purchaser's immediate legal needs.  Likewise, the State Bar accepted for registration plans that specifically include in their benefits services that are provided by non-attorneys, including access to electronic forms and documents and interactive document assembly tools, similar to the online document services provided by LegalZoom that the State Bar contends constitutes the unauthorized practice of law.

68.    LegalZoom "appealed" Defendant Walthall's decision to the State Bar's Authorized Practice Committee.  On April 15, 2015, the Committee heard LegalZoom's "appeal" during a regularly-scheduled meeting.  Defendant Walthall personally advocated to the Committee that it affirm his decision to refuse to register LegalZoom's plans.  LegalZoom explained, both in written briefing and orally at the hearing, that the State Bar lacked authority to refuse to register LegalZoom's plans based on its self-adopted definitions and rules.  LegalZoom explained that the Legislature had removed from the State Bar any power to approve or regulate legal plans, leaving only the ministerial duty to register plans on forms provided by the Council.  LegalZoom also demonstrated, with evidence, that the State Bar had previously registered legal plans

containing the same features on which Defendant Walthall was purportedly basing his decision to refuse registration.

69.     Nonetheless, at the conclusion of the portion of its meeting devoted to LegalZoom's "appeal," the Authorized Practice Committee voted to refuse to register LegalZoom's plans, thus continuing to exclude their sale to North Carolina consumers in the Relevant Market.  Upon information and belief, except for one "public" non-attorney member, every single committee member who voted to deny registration is a licensed North Carolina attorney, almost all of whom are attorneys in private practice in North Carolina and are active participants in the Relevant Market.

## VI.     Claims for Relief.

**Count I:     Combination and conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.**

70.     Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.

71.     As described above, beginning at least as early as September 2010 and continuing through at least April 2015, Defendants and their co-conspirators entered into a continuing agreement, understanding, combination and/or conspiracy in restraint of trade, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Section 1 of the Sherman Act.

72.     The Defendants' refusal to register LegalZoom's prepaid legal services plans constitutes a boycott, a collective refusal to deal and the exclusion of a competitor from the Relevant Market by Market Participants with market power, and thus a *per se*

29

antitrust violation. In the alternative, the Defendants' refusal to register LegalZoom's prepaid legal services plans constitutes an unreasonable restraint of trade.

73. Defendants' unlawful combination and conspiracy injured competition in the Relevant Market and proximately caused LegalZoom economic loss and damages by their refusal to register LegalZoom's prepaid legal services plans, for which it seeks to recover.

**Count II:** **Monopolization, attempted monopolization, and combination and conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.**

74. Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.

75. The State Bar has market power in the Relevant Market.

76. As described above, beginning at least as early as July 2010 and continuing through at least April 2015, Defendants and their co-conspirators have monopolized, through the willful acquisition, maintenance, and/or enhancement of monopoly power; attempted to monopolize; and/or combined and conspired to monopolize the Relevant Market, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Section 2 of the Sherman Act.

77. Defendants' unlawful monopolization, attempted monopolization, and/or combination and conspiracy to monopolize both injured competition in the Relevant Market and resulted in the unlawful exclusion of Plaintiff from that Market. Defendants'

conduct proximately caused LegalZoom economic loss and damages by their refusal to register LegalZoom's prepaid legal services plans, for which it seeks to recover.

## VII.    Relief Sought.

78.    The Defendants' unreasonable anticompetitive and monopolistic conduct, as described above, has caused LegalZoom substantial economic harm.  The Defendants' illegal conduct has prevented LegalZoom from selling popular and successful prepaid legal services plans in North Carolina, prevented North Carolina attorneys from providing legal services through LegalZoom's plans and deprived North Carolina consumers of low-cost, efficient legal services.

79.    LegalZoom's plans have a well-established record of successful sales in all states where it has offered the plans for sale.  Because of Defendants' unreasonable anticompetitive conduct and collusion with private practice attorneys to prevent LegalZoom's plans from being sold in North Carolina, LegalZoom was unable to enjoy the same sales success in this State.  LegalZoom is able to estimate the lost sales caused by the Defendants' conduct based on LegalZoom's sales in states of comparable size to North Carolina during the relevant time period.  Based on these comparisons, LegalZoom estimates that the Defendants' anticompetitive conduct has caused LegalZoom to lose more than $3,500,000 in sales.  LegalZoom's damages are continuing each day it is unable to sell its plans in North Carolina due to the Defendants' unlawful actions, and it will seek to recover all additional damages it incurs during the pendency of this lawsuit.

80.     LegalZoom seeks to recover treble damages pursuant to 15 U.S.C. § 15(a), and therefore seeks an award of damages of more than $10,500,000.  LegalZoom's damages are continuing each day it is unable to sell its plans in North Carolina due to the Defendants' unlawful actions, and it will seek treble recovery of all additional damages it incurs during the pendency of this lawsuit.

81.     LegalZoom also seeks to recover costs, prejudgment interest and attorneys' fees pursuant to 15 U.S.C. § 15(a).

82.     LegalZoom also seeks permanent injunctive relief prohibiting Defendants, and all persons in active concert with them, from engaging in anticompetitive conduct, including using the State Bar's definition of prepaid legal services plan as the basis for refusing registration or otherwise using arbitrary criteria as a basis for refusing registration, and specifically from continuing to refuse to register LegalZoom's prepaid legal services plans.

83.     LegalZoom seeks such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

## VIII.  Jury Trial Demand.

84.     Pursuant to Federal Rule of Civil Procedure 38(b), LegalZoom demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     adjudge and declare that Defendants have engaged in unlawful conduct in violation of § 1 of the Sherman Act, 15 U.S.C. § 1;

(2)     adjudge and declare that Defendants have engaged in unlawful conduct in violation of § 2 of the Sherman Act, 15 U.S.C. § 2;

(3)     award Plaintiff actual damages, trebled by law, plus costs of suit, prejudgment interest, and attorneys' fees pursuant to pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15;

(4)     enter a permanent injunction prohibiting Defendants from continuing its illegal and anticompetitive actions as alleged herein and requiring the North Carolina State Bar to accept registration of Plaintiff's prepaid legal services plans; and

(5)     grant such further relief at law or in equity as the Court deems just and appropriate.

Respectfully submitted this the 3d day of June, 2015.

NEXSEN PRUET, PLLC

/s/ Marguerite S. Willis
Marguerite S. Willis
N.C. State Bar No. 8045
R. Daniel Boyce
N.C. State Bar No. 12329
Thomas J. Ludlam
N.C. State Bar No. 43431

Post Office Drawer 2426
Columbia, South Carolina 29202
Telephone:  (803) 771-8900
Facsimile:   (803) 253-8277
Email: MWillis@nexsenpruet.com

4141 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone: 919-755-1800
Facsimile:  919-653-0435
Email: DBoyce@nexsenpruet.com
        TLudlam@nexsenpruet.com


**OF COUNSEL:**

Peter D. Kennedy
Texas Bar Card No. 11296650
Graves Dougherty
Hearon & Moody, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas  78701
(512) 480-5764
E-mail: PKennedy@gdhm.com